BRYAN SCHWARTZ (SBN 209903)
ADETUNJI OLUDE (SBN 264873)
BRYAN SCHWARTZ LAW
1330 Broadway, Suite 1630
Oakland, California 94612
Telephone: (510) 444-9300
Facsimile:  (510) 444-9301
Email: bryan@bryanschwartzlaw.com
Email: adetunji@bryanschartzlaw.com

*Attorneys for Individual and Representative*
*Plaintiff Morales, et al., and the Putative Class*

Additional Counsel listed on last page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA MORALES, BERENISA CORTES PALOMINOS, DYLAN THOMAS, and FRANCES HANDCOCK, on behalf of themselves and classes of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VON CURTIS, INC., a corporation; P.M. ADVANCED EDUCATION INC., a corporation; PAUL MITCHELL ADVANCED EDUCATION LLC, a corporation; JOHN PAUL MITCHELL SYSTEMS, a corporation; PMNV LAS VEGAS, LLC, a corporation; PMCA BAKERSFIELD, LLC, a corporation; PMHBW LLC, a corporation; PAUL MANTEA, an individual; D'ANN EVANS, an individual; ANN MARIE SAFADI, an individual; WINN CLAYBAUGH, an individual; JOHN PAUL DEJORIA collectively dba "PAUL MITCHELL THE SCHOOL"; and DOES 1 THROUGH 100,<br><br>Defendants | Case No. CV 13-04996-VGC<br><br>**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT FOR:**<br><br>**(1)   Violation of Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.*;**<br>**(2)   Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.*;**<br>**(3)   Unpaid Minimum Wages (Cal. Lab. Code § 1194);**<br>**(4)   Unpaid Overtime Wages (Cal. Lab. Code §§ 510, 1194);**<br>**(5)   Meal and Rest Period Violations (Cal. Lab. Code §§ 226.7, 512);**<br>**(6)   Waiting Time Penalties (Cal. Lab. Code §§ 201, 202, 203);**<br>**(7)   Itemized Wage Statement Violations (Cal. Lab. Code § 226);**<br>**(8)   Coerced Purchases(§§ 17200, 450(a));**<br>**(9)   Failure to Reimburse Business Expenses (§ 2802);**<br>**(10)  Unpaid Minimum Wages (Nevada Constitution, N.R.S. §§ 608.016, 608.250);** |

1

|     |                                                                            |
|-----|----------------------------------------------------------------------------|
| **(11)** | **Unpaid Overtime Wages (N.R.S. § 608.018);** |
| **(12)** | **Waiting Time Penalties (N.R.S. § 608.040);** |
| **(13)** | **Violation of Pay Schedule (N.R.S. § 608.060);** |
| **(14)** | **Unjust enrichment/restitution under Nevada Law;** |
| **(15)** | **Declaratory relief (28 U.S.C. §§ 2201-2202).** |

**JURY TRIAL REQUESTED**

_____

Plaintiffs JESSICA MORALES, BERENISA CORTES PALOMINOS, DYLAN THOMAS, and FRANCES HANDCOCK ("Named Plaintiffs"), by and through their attorneys, on behalf of themselves and classes of those similarly situated, hereby complain against Defendants VON CURTIS, INC., P.M. ADVANCED EDUCATION INC., PAUL MITCHELL ADVANCED EDUCATION LLC, JOHN PAUL MITCHELL SYSTEMS, PMNV LAS VEGAS, LLC, PMCA BAKERSFIELD, LLC, PMHBW LLC, WINN CLAYBAUGH, JOHN PAUL DEJORIA, PAUL MANTEA, D'ANN EVANS, ANN MARIE SAFADI, and DOES 1 through 100, inclusive (collectively "Defendants" or "Paul Mitchell The School") and allege upon personal knowledge and belief as to their own acts, and upon information and belief (based upon the investigation of their counsel) as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## I.  INTRODUCTION

1.      Named Plaintiffs are former students and employees ("student-employees") of Paul Mitchell The School.  They enrolled in hair cutting and cosmetology programs at Paul Mitchell The School in order to pursue their dreams of becoming trained, experienced professionals.  Not only did Defendants fail to provide the education and training advertised, Defendants also unlawfully exploited Plaintiffs' labor and benefitted as a result.

2

2.      The Paul Mitchell The School is a for-profit business.  Among Defendants' for-profit business activities is the provision of educational services (the "educational services business") to paying students in the cosmetological trades.  This includes training students to practice the trades of cosmetology, barbering, esthetics or skin care, makeup artistry, manicuring, and massage therapy.

3.      The Paul Mitchell The School's for-profit business activities also include the provision of personal services, for a fee, to the public (the "personal services business").   The Paul Mitchell The School salons offer a range of personal services for hair, skin, and body. Defendants advertise to the public that their beauty salons are comparable to other salons in the beauty and personal services industry, but are much cheaper because the work is performed by "[f]uture professionals under the supervision of an instructor."[1]  Additionally, Defendants also sell Paul Mitchell salon and beauty products to the public and to Plaintiffs and other student-employees.

4.      Each of the Plaintiffs and similarly situated employees worked many hours, for which Defendants failed to compensate them at all.  Defendants' policy and practice required their student-employees, under the guise of educational experience, to provide cosmetology, barbering, esthetics or skin care, makeup artistry, manicuring and massage services to the public. Student-employees provided these services to Defendants' paying clients.

5.      By failing to compensate Plaintiffs and thousands of other student-employees for their work, Defendants have denied them the benefits that the law affords to employees.  Not only did Defendants charge tuition fees and extract massive fines from Plaintiffs and other student-employees, they exploited their labor and pocketed the profits.

6.      While working for Defendants in Paul Mitchell The School salons, Plaintiffs were required to provide hair and cosmetology services to paying clients as well as clean, sweep, wash

---

[1]  http://eastbay.paulmitchell.edu/guest-services/services, last visited April 27, 2014.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT
CASE NO. CV 13-04996-VGC

and fold laundry, take out the garbage, schedule clients, and stock and dispense supplies. Defendants' failure to compensate them for all of their work runs afoul of federal and state wage-and-hour laws, which require employers to pay the minimum wage and overtime to all workers whom they "suffer or permit" to work.  Defendants' salons also compete with standard salons and displace other professionals in the beauty and personal services industry.

7.     Defendants' practices are in direct violation of the applicable federal and state wage-and-hour laws described below and constitute unfair business practices under state law. Plaintiffs, on behalf of both themselves and the other putative class members, seek unpaid wages and interest thereon for failure to pay for all hours worked at least at minimum wage; failure to pay overtime premium wages for overtime hours worked; failure to provide required meal periods or pay meal period premium wages; failure to provide required rest periods or pay rest period premium wages; statutory penalties for failure to provide accurate wage statements; waiting time penalties in the form of continuation wages for failure to timely pay employees all wages due upon separation of employment; failure to reimburse necessary business expenses; imposing and collecting unlawful fines; liquidated damages for failure to pay minimum wage; restitution for unfair competition; damages for failure to timely pay all wages according to schedule; declaratory judgment; injunctive relief and other equitable relief; reasonable attorney's fees pursuant to California Labor Code Sections 226(h) and 1194, 29 U.S.C. § 216(b), and Nevada Constitution, Article 15, Section 16; costs; and interest brought on behalf of Plaintiffs and others similarly situated.

8.     Plaintiffs seek to certify a Rule 23 class of all similarly situated persons who work, or have worked, as an unpaid student-employee at Paul Mitchell The School salons in California and Nevada, as well as an FLSA Collective Action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA").

## II.  <u>JURISDICTION AND VENUE</u>

9.     This Court has original jurisdiction over the first claim for relief pursuant to 28 U.S.C. § 1331 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  This Court has original

4

jurisdiction over the Second through Fifteenth claims for relief under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because those claims involve class actions in which: (1) there are 100 or more members in each of the proposed classes; (2) at least some members in each of the proposed classes have a different citizenship from Defendants; and (3) the claims of the proposed class members in each of the proposed classes exceed $5,000,000 in the aggregate.  This Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332(a).

10.     In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Named Plaintiffs' state law wage-and-hour claims because those claims derive from a common nucleus of operative fact as the FLSA claims alleged herein.

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and 28 U.S.C. § 1331.

12.     The Northern District of California has personal jurisdiction over this matter because Defendants, presently and at all times relevant to this action, have conducted substantial and continuous commercial activities in this District and because many of the acts complained of herein occurred in this District and gave rise to the claims alleged.

13.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events and omissions giving rise to this action occurred in this District and because this Court has personal jurisdiction over one or more corporate Defendants Von Curtis, Inc., P.M. Advanced Education Inc., Paul Mitchell Advanced Education LLC, John Paul Mitchell Systems, PMNV Las Vegas, LLC, PMCA Bakersfield, LLC and PMHBW LLC.

14.     Pursuant to N.D. Cal. Local Rule 3-2(c) and (d), intra-district assignment to the San Francisco Division is proper.

## III.   **PARTIES**

15.     Plaintiff Jessica Morales resides in Los Angeles County, California.  Plaintiff Morales was a student and employee of Paul Mitchell The School from June 2011 to June 2012 at Defendants' Sherman Oaks school.

5

16.     Plaintiff Berenisa Cortes Palominos resides in Solano County, California. Plaintiff Palominos was a student and employee of Paul Mitchell The School from 2011 to 2012 at Defendants' East Bay school.

17.     Plaintiff Dylan Thomas resides in Clark County, Nevada.  Plaintiff Thomas was a student and employee of Paul Mitchell The School at Defendants' Las Vegas school from March 2011 to December 2012.

18.     Plaintiff Frances Handcock resides in Fresno County, California.  Plaintiff Handcock was a student and employee of Paul Mitchell The School at Defendants' Fresno school from 2011 to October 2012.

19.     Named Plaintiffs are informed and believe that Defendant Von Curtis, Inc. (one of the "Paul Mitchell Corporate Defendants" and a "Parent Corporation Defendant") is a Utah corporation.

20.     Named Plaintiffs are informed and believe that Defendant John Paul Mitchell Systems (one of the "Paul Mitchell Corporate Defendants" and a "Parent Corporation Defendant") is a California corporation.

21.     Named Plaintiffs are informed and believe that Defendant Paul Mitchell Advanced Education LLC (one of the "Paul Mitchell Corporate Defendants" and a "Parent Corporation Defendant") is a Delaware corporation.

22.     Named Plaintiffs are informed and believe that Defendant P.M. Advanced Education Inc. (one of the "Paul Mitchell Corporate Defendants" and a "Parent Corporation Defendant") is a California.

23.     Named Plaintiffs are informed and believe that Defendant PMNV Las Vegas, LLC (one of the "Paul Mitchell Corporate Defendants") is a Delaware corporation.

24.     Named Plaintiffs are informed and believe that Defendant PMCA Bakersfield, LLC (one of the "Paul Mitchell Corporate Defendants") is a Delaware corporation.

25.     Named Plaintiffs are informed and believe that Defendant PMHBW LLC (one of the "Paul Mitchell Corporate Defendants") is a Delaware corporation.

6

26.     Named Plaintiffs are informed and believe that Defendant Paul Mantea is a California resident.  Defendant Paul Mantea is an owner, in full or in part, of Paul Mitchell The School location at Sherman Oaks, CA, and/or is an owner, in full or in part, of one or more entities that either directly, or through their ownership of other entities, have an ownership interest in Paul Mitchell The School.

27.     Named Plaintiffs are informed and believe that Defendant John Paul Dejoria is a Texas resident.  Defendant John Paul Dejoria is an owner, in full or in part, of Paul Mitchell The School, or is an owner, in full or in part, of one or more entities that either directly, or through their ownership of other entities, have an ownership interest in Paul Mitchell The School.

28.     Named Plaintiffs are informed and believe that Defendant D'Ann Evans is a California resident.  Defendant D'Ann Evans is an owner, in full or in part, of Paul Mitchell The School location in Fresno, CA, and/or is an owner, in full or in part, of one or more entities that either directly, or through their ownership of other entities, have an ownership interest in Paul Mitchell The School.

29.     Named Plaintiffs are informed and believe that Defendant Ann Marie Safadi is a Nevada resident.  Defendant Ann Marie Safadi is an owner, in full or in part, of Paul Mitchell The School location in Las Vegas, NV, and/or is an owner, in full or in part, of one or more entities that either directly, or through their ownership of other entities, have an ownership interest in Paul Mitchell The School.

30.     Named Plaintiffs are informed and believe that Defendant Winn Claybaugh is a Utah resident.  Defendant Winn Claybaugh is an owner, in full or in part, of Paul Mitchell The School, or is an owner, in full or in part, of one or more entities that either directly, or through their ownership of other entities, have an ownership interest in Paul Mitchell The School.

31.     Defendants, or some of them, are registered to do business in the United States under the name "Paul Mitchell The School" with some additional moniker which is often or always a geographical name.  Paul Mitchell The School provides both cosmetology educational services and operates a cosmetology and spa personal services business in this judicial district.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

CASE NO. CV 13-04996-VGC

Upon information and belief Defendants collectively own and operate over 50 and possibly over 100 Paul Mitchell The School locations in Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington and Wisconsin.

32.     Defendants, or some of them, also have a financial interest in, and business relations with, certain beauty or cosmetology schools that are franchisees with one or more of the Defendants acting as the franchiser.  Such locations operate not as "Paul Mitchell The School" but as one or more expressly denominated "Paul Mitchell Partner School(s)."  No claims are made in this Complaint against any such franchisees arising from the operations conducted by any "Paul Mitchell Partner School."  When the term "Paul Mitchell The School" is used in this Complaint it does not include any of the "Paul Mitchell Partner Schools" or the operations or activities conducted at or by such locations.

**IV.    THE STATUS OF CERTAIN DEFENDANTS AS A JOINTLY LIABLE EMPLOYER OR JOINTLY LIABLE ENTERPRISE**

33.     Each Paul Mitchell The School location is registered with the respective State and/or other government regulatory authorities in the jurisdiction in which it operates as each being owned and/or operated by a separate corporate entity (an "Operating Entity").

34.     Some or all of the Parent Corporation Defendants and Defendants Claybaugh and DeJoria, either directly or through intermediaries that they own and control, own all or a part of all of the Operating Entities that conduct the business of Paul Mitchell The School.

35.     Some or all of the Parent Corporation Defendants and Defendants Claybaugh and DeJoria, either directly or through intermediaries that they own and control, control all of the activities of the Operating Entities that conduct the business of Paul Mitchell The School, in that such Defendants can, and do, make all of the decisions about how such Operating Entities can, and are allowed to, conduct the business operations of their respective Paul Mitchell The School

locations.

36.     Some or all of the Parent Corporation Defendants and Defendants Claybaugh and DeJoria, either directly or through intermediaries that they own and control, are the true operators of the Operating Entities that conduct the business of Paul Mitchell The School, in that such Defendants can, and do, determine if such Operating Entities can, and are allowed to, conduct their business operations of their respective Paul Mitchell The School locations, such Operating Entities having no actual economic value or assets or ability to conduct profitable business operations besides their ongoing operations as a Paul Mitchell The School location, the continuance of such operations being subject to the whims of the Parent Corporation Defendants or some of them and Defendants Claybaugh and DeJoria.

37.     The Parent Corporation Defendants, or some of them, along with Defendants Claybaugh and DeJoria, are properly considered a single legally liable common enterprise, or legally liable joint employer, in respect to the claims made in this Complaint against Paul Mitchell The School.  Such Defendants own and have structured, managed and controlled the Operating Entities, and the other Paul Mitchell Corporate Defendants, and the operations of Paul Mitchell The School locations throughout the United States, in the following manner:

(a)  Such Defendants have intentionally established the Operating Entities and other Paul Mitchell Corporate Defendants for the sole purpose of shielding themselves from legal liability from the operations of the same even though such Defendants have also caused and directed the actions giving rise to the liabilities asserted in this Complaint.  Those actions are also criminal offenses under the FLSA and various state laws.  As a result, such Defendants, as the instigators of those actions, cannot escape the civil liabilities associated with such criminal conduct by hiding behind the nominally separate legal existence of the Operating Entities and the other Paul Mitchell Corporate Defendants, as such nominally separate entities were mere tools for and instruments of such Defendants' illegal scheme;

(b)  Such Defendants by virtue of their complete control of the Operating Entities

9

and the other Paul Mitchell Corporate Defendants have vitiated the separate legal existence of those entities as a matter of economic reality, as those entities have no other business purpose, function, or economic viability except as instruments of such Defendants for the conducting of the operations giving rise to the claims asserted in this Complaint;

(c)  Such Defendants by virtue of their complete control of the Operating Entities and the other Paul Mitchell Corporate Defendants have assumed the status of joint employers of the Plaintiffs and other class members as both a matter of economic reality and law.  Such assumption of joint employer status is required to prevent injustice and the evasion of the FLSA and the state laws at issue.  The imposition of such joint employer status is justified as the level of control and direction exercised by such Defendants over the Operating Entities and the other Paul Mitchell Corporate Defendants was overwhelming and rendered the same mere straw or sham employers of the Plaintiffs and other class members;

(d) Such Defendants engaged, or suffered and permitted student-employees to work on behalf of Paul Mitchell The School locations, and had control over their wages, hours, and working conditions.  Such Defendants knew that student-employees serviced their paying customers while being paid less than the minimum wage.  Such Defendants had the power to enforce Paul Mitchell The School policies regarding payment of minimum wages to student-employees.  Yet, such Defendants failed to prevent the student-employees from working under these conditions.

(e)  Such Defendants exercised centralized control of labor relations at Operating Entities.  Such Defendants directed decisions regarding day-to-day employment matters at Operating Entities including, but not limited to, the policy not to pay Plaintiffs and other student-employees, salon hours of operation, hours of work for full and part time student-employees, student-employee discipline, and student-employee attire and appearance.

(f)  Such Defendants' operations were interrelated with the Operating Entities and

10

entailed common management between them and the Operating Entities.  Such

Defendants promulgated policies that influenced or made, at least in some part, certain

managerial decisions at the Paul Mitchell The School locations including, but not limited

to, providing suggested retail prices and requiring that services be offered at a discount

from the retail price offered at salons in the area,

(g)  Such Defendants required Operating Entities to name Defendants as an

additional insured party in its insurance policy and set requirements concerning

computers and software the Operating Entities must use for record keeping.

(h)  Such Defendants, to the extent they have publicly identified themselves or

allowed themselves to be identified as partners, owners or co-owners of one or more Paul

Mitchell The School locations, are now prohibited, as a matter of law, from denying such

ownership status and the legal liability that results from such ownership status.

## V.  GENERAL FACTS AND ALLEGATIONS

38.     Named Plaintiffs re-allege and incorporate by reference herein all allegations

previously made in Paragraphs 1 through 38 above.

39.     Defendants are, and at all times relevant to this Complaint were, an "employer"

under the FLSA and the applicable state laws and/or regulations of Nevada.  Defendants Von

Curtis, Inc., P.M. Advanced Education Inc., Paul Mitchell Advanced Education LLC, John Paul

Mitchell Systems, PMNV Las Vegas, LLC, PMCA Bakersfield, LLC and PMHBW LLC

(collectively "Paul Mitchell Corporate Defendants") are, and at all times relevant to this

Complaint were, an "employer" under the applicable state laws and/or regulations of California.

40.     Each Named Plaintiff was at all times relevant to this Complaint an "employee" of

Defendants, as that term is defined under the FLSA and the applicable state laws and/or

regulations of California and Nevada.

41.     Defendants operate more than 100 beauty schools locations across the country

under the business name "Paul Mitchell The School."  At the Paul Mitchell The School,

Defendants provide cosmetology educational services to paying students pursuant to their

11

educational services business.  Defendants also provide personal services to members of the public, for which they charge fees.  Defendants offer cosmetology, barbering, esthetics or skin care, makeup artistry, manicuring and massage services to the public.  Defendants also sell Paul Mitchell salon and beauty products to the public and to Plaintiffs and other student-employees.

42.     Defendants' personal services business is designed to and does generate a profit for Defendants.

43.     Defendants actively promote and advertise their personal services business to the public on their website and through other means.  Defendants offer services to the public at a cost lower than that typically charged by other businesses that do not exploit the uncompensated labor provided by student-employees.

44.     Defendants required their students, including Plaintiffs and other student-employees, to work as employees for all the time that they were subject to the control of Defendants on the salon floor.  Plaintiffs and other student-employees were required to clock in and out for their scheduled shifts and, as discussed further below, were fined for tardiness or absences.  Plaintiffs and other student-employees were expected to perform personal services for paying clients as well as perform other work such as cleaning and laundry.

45.     Despite advertising that the student-employees would be trained and supervised by a licensed instructor at all times, Defendants did not provide such support.  In fact, there was often no instructor present to supervise and educate as many as 50 students who were working on the salon floor at any given time.  The student-employees performed all advertised services for Defendants' paying clients with little to no actual supervision.

46.     Defendants required Plaintiffs and other students similarly situated to provide personal services as requested by Defendants' customers.  Whether or not the service requested was something Plaintiffs or others students similarly situated needed to study to prepare for their licensing exams, they were nevertheless required to provide the service.  Often, the customers did not provide sufficient variation in skills and tasks needed for licensing and certification.  However, Plaintiffs and others similarly situated were required to provide the services as

requested, whether or not they needed or would benefit from experience in that area.

47.     Plaintiffs and other students similarly situated paid thousands of dollars apiece so that Defendants could hire instructors whose main function was to instruct the students and supervise their work as student-employees.  Defendants, however, failed to provide the supervision required by law while the students were working on the salon floor.  Defendants led Plaintiffs and others similarly situated to believe that they were paying tuition to learn the skills necessary to succeed in the glamorous profession of beauty and cosmetology.  Instead, Defendants converted students into student-employees to profit from their free labor, both in the services the student-employees provided as well as the salon products they sold.  Defendants alone benefited from the arrangement, turning students into salespeople and learning experiences into corporate profit.

48.     The labor provided by Plaintiffs and the class members was and is essential to Defendants' personal services business.  The work Defendants required the student-employees to do would not have been done by paid staff already in place had the student-employees not done the work, nor were Defendants' paid staff prevented from completing more productive tasks in less time because of their supervisory responsibilities over the students.  Without the benefit of free labor from student-employees, Defendants would be required to secure additional employees in order to maintain their operations and the level of revenue they received from their personal services business or charge higher, and less competitive, rates.

49.     Defendants compete with other profit-making businesses that provide the same personal services to the public, many of which do not utilize free labor from their employees.  Defendants' failure to pay wages due to Plaintiffs and others similarly situated results in lower operating costs, which affords Defendants with a higher net income and a competitive advantage in the marketplace for personal salon services.

50.     Defendants' use of unpaid labor to generate profits for their personal service business has the effect of depressing wages and employment opportunities generally among other workers in the industry who otherwise would have provided such personal services for at least

minimum wage. Other employers who provide the same personal services as Defendants' business are unable to increase the wages of their employees or hire more workers to provide such services while remaining competitive with Defendants' business.

51. Defendants could have provided the student services to the public for free or for a nominal charge equal to the costs, if any, of the materials consumed. Defendants, however, consciously chose to require the student-employees to provide beauty and cosmetology services, and to sell Paul Mitchell salon and beauty products, solely for Defendants' benefit and profit. Defendants did so in order for their business to operate at a profit and compete unfairly with other personal services businesses that pay their employees at least the minimum wage required by the FLSA and state laws.

52. While acting on the direct instruction of Defendants and discharging their duties for them, Plaintiffs and other similarly situated student-employees have incurred work-related expenses. Such expenses include but are not limited to the purchase of salon supplies; gloves, combs, brushes, blow dryers, other tools and accessories necessary to service clients; and Paul Mitchell salon and beauty products. Plaintiffs and other similarly situated student-employees incurred these expenses and losses as a direct result of performing their job duties for Defendants.

53. Although Plaintiffs and other student-employees similarly situated received the "clock hours" they needed in order to sit for their examinations to become licensed practitioners, Defendants' for-profit personal services business was and continues to be irrelevant to those educational goals. Defendants could have provided the same experience to students without requiring them to sell products to the general public and without charging for the services Plaintiffs and other similarly situated student-employees provided, other than a nominal charge equal to the costs, if any, of the materials consumed. Moreover, Plaintiffs and others similarly situated generally did not receive personal training or supervision from an instructor while they worked in Defendants' salons. Instead, they performed exactly the same work as a non-student employee would, providing personal services requested by paying customers according to Defendants' list of available salon services.

14

54.     Plaintiffs and others similarly situated performed work for Defendants under the guise of education and were not compensated at all for their labor.  Defendants did not and continue to not pay their employees for all time during which the student-employees were subject to Defendants' control.

**A.      Plaintiffs Morales, Palominos, and Handcock and the California Class.**

55.     As a student-employee of the Paul Mitchell The School at the Sherman Oaks location, Plaintiff Morales paid approximately $21,000 to attend the Cosmetology program.  This program was advertised as consisting of 1600 "clock hours" of education and training.

56.     While attending the program, Plaintiff Morales also worked as an unpaid employee for Defendants providing services as a hairstylist in Defendants' personal services business.  Plaintiff Morales worked from at least 9 a.m. to 5 p.m., five days a week. If a client needed attention after 5 p.m., Plaintiff Morales had to stay later and finish servicing the client.

57.     Pursuant to her work for Defendants in the salon, Plaintiff Morales consulted with clients and provided haircutting and styling services.  Apart from providing direct services to clients, Plaintiff Morales also worked in the laundry, in the front desk area hosting and greeting clients, dispensed supplies and products to other student-employees, and cleaned the salon, including sweeping floors, washing bowls, and cleaning mirrors, mats, and chairs.

58.     Although Defendants advertised that student-employees would be supervised by an instructor when providing services to the public, Plaintiff Morales and others regularly worked in the salon with only one to two instructors present to supervise as many as fifty student-employees.  For many of her shifts, she and the other student-employees worked in the salon with minimal supervision or assistance from an instructor.

59.     Completion of some services to Defendants' customers required the handling of chemical-based salon and beauty products.  Defendants required Plaintiffs and other student-employees to wear gloves.  Plaintiff Morales was forced to purchase gloves because Defendants did not provide her with gloves to service their paying customers.

60.     Defendants pressured Plaintiff Morales to sell Paul Mitchell products to

15

customers.  Plaintiff Morales never received any commission or pay for selling products to customers.

61.     As a student-employee of the Paul Mitchell The School at the East Bay location, Plaintiff Palominos paid approximately $19,000 to attend the Cosmetology program.

62.     While attending the program, Plaintiff Palominos also worked as an unpaid employee for Defendants providing services as a hairstylist in Defendants' personal services business.  Plaintiff Palominos worked from at least 9:30 a.m. to 5:30 p.m., five days a week.  If a client needed attention after 5:30 p.m., Plaintiff Palominos had to stay later and finish servicing the client.

63.     Pursuant to her work for Defendants in the salon, Plaintiff Palominos consulted with clients and provided haircutting and styling services.  Apart from providing direct services to clients, Plaintiff Palominos also worked in the laundry, in the color bar preparing hair dyes for clients, washed dishes and brushes, and cleaned the salon.

64.     Although Defendants advertised that student-employees would be supervised by an instructor when providing services to the public, for many of her shifts, Plaintiff Palominos and the other student-employees worked in the salon with minimal supervision or assistance from an instructor.

65.     Defendants pressured Plaintiff Palominos to sell Paul Mitchell products to customers.  Plaintiff Palominos never received any commission or pay for selling products to customers.

66.     As a student-employee of the Paul Mitchell The School at the Fresno location, Plaintiff Handcock paid approximately $18,000 to attend the Cosmetology program.  This program was advertised as consisting of 1600 "clock hours" of education and training.

67.     While attending the program, Plaintiff Handcock also worked as an unpaid employee for Defendants providing services as a hairstylist in Defendants' personal services business.  Plaintiff Handcock worked from at least 9 a.m. to 5 p.m., five days a week.

68.     Pursuant to her work for Defendants in the salon, Plaintiff Handcock consulted

16

with clients and provided haircutting and styling services.  Apart from providing direct services to clients, Plaintiff Handcock also worked in the laundry, dispensed supplies and products to other student-employees, and cleaned the salon, including wiping counters, sweeping floors, and taking out the garbage.

69.     Although Defendants advertised that student-employees would be supervised by an instructor when providing services to the public, Plaintiff Handcock and others regularly worked in the salon with only one to two instructors present to supervise as many as sixty student-employees.  For many of her shifts, she and the other student-employees worked in the salon with minimal supervision or assistance from an instructor.

70.     Defendants pressured Plaintiff Handcock to sell Paul Mitchell products to customers.  Plaintiff Handcock never received any commission or pay for selling products to customers.

71.     Plaintiffs Morales, Palominos, and Handcock received no compensation for their work and no records showing the hours they worked.

72.     While working as student-employees, Plaintiffs Morales, Palominos, and Handcock routinely worked throughout their shifts without being provided uninterrupted 30-minute meal breaks and 10-minute rest breaks.

73.     Upon information and belief, all California student-employee class members performed or perform job duties of substantially similar nature as Plaintiffs Morales, Palominos, and Handcock and under the same terms and conditions.

74.     Plaintiff Morales, Palominos, and Handcock are aware of Defendants' policy and practices regarding absences.  Defendants imposed a fine on student-employees of $12 per hour for hours student-employees worked to make up time that they were scheduled to work, but missed, in Paul Mitchell The School salons.  On information and belief, student-employees who did not pay the fine and did not make up time for absences were not permitted to graduate from the program.

75.     Student-employees were required to purchase items from Defendants which were

17

necessary to service paying customers.  Defendants coerced Plaintiffs Morales, Handcock, and Palominos to make such purchases. For example, Defendants forced student-employees to buy a "student kit" consisting of brushes, combs, and other salon tools and accessories, including Paul Mitchell products. Student-employees used the items contained in "student kit" to provide services to Defendants' customers. "Student kit" items needed to be replaced on occasion at student-employees' own expense.

**B.      Plaintiff Thomas and the Nevada Class.**

76.      As a student-employee of the Paul Mitchell The School at the Las Vegas, Nevada location, Plaintiff Thomas paid approximately $18,000 to attend the Cosmetology program.  This program was advertised as consisting of 1800 "clock hours" of education and training.

77.      While attending the program, Plaintiff Thomas also worked as an unpaid employee for Defendants providing services as a hairstylist in Defendants' personal services business.  Plaintiff Thomas worked from 5 p.m. to 10 p.m., four days a week while enrolled at Paul Mitchell The School part-time.  Plaintiff Thomas later enrolled as a full-time student and worked from 9 a.m. to 5 p.m., five days a week.  If a client needed attention after his work shift, Plaintiff Thomas had to stay later and finish servicing the client and clean up.

78.      Pursuant to his work for Defendants in the salon, Plaintiff Thomas consulted with clients and provided haircutting and styling services.  Apart from providing direct services to clients, Plaintiff Thomas also worked in the laundry, and cleaned the salon, including washing bowls and dishes.  He also worked as a receptionist, performing duties such as scheduling clients, taking calls, checking clients in, and offering beverages to clients.

79.      Although Defendants advertised that student-employees would be supervised by an instructor when providing services to the public, Plaintiff Thomas and others regularly worked in the salon with only three to four instructors present to supervise as many as 100 student-employees.  For many of his shifts, he and other student-employees worked in the salon without adequate supervision.

80.      Defendants pressured Plaintiff Thomas to sell Paul Mitchell products to

18

customers.  During his enrollment at Paul Mitchell The School, Plaintiff Thomas was required to meet monthly sales quotas and obtain an instructor's signature verifying that he achieved the quotas.  Defendants Plaintiff Thomas never received any commission or pay for selling products to customers.

81.     At the salon, the student-employees were required to use Paul Mitchell products. When they ran out of a product, the student-employees were required to buy the product from Paul Mitchell The School.  Although the products were intended for use on and were in fact used to service paying clients, Paul Mitchell The School did not reimburse the student-employees. Plaintiff Thomas purchased products from Paul Mitchell The School for use on clients with his own money and was not reimbursed.

82.     Like the California class, Nevada student-employees were also required to purchase items necessary to service paying customers.  Defendants required Plaintiff Thomas to buy a "student kit" consisting of brushes, combs, and other salon tools and accessories.  Plaintiff Thomas used the items contained in "student kit" to provide services to Defendants' customers. Throughout the time Plaintiff Thomas provided services to Defendants' customers, some items in the "student kit" required replacement.  Defendant would not pay to replace "student kit" items. Plaintiff Thomas paid to replace a blow dryer needed to provide haircutting and styling services to Defendants' customers.

83.     Plaintiff Thomas received no compensation for his work and no records showing the hours he worked.

84.     Upon information and belief, all Nevada student-employee class members performed or perform job duties of substantially similar nature as Plaintiff Thomas and under the same terms and conditions.

85.     Plaintiff Thomas and other student-employees were subject to the same policy regarding fines for making up absences.  Defendants imposed a fine of $12 per hour to make up hours that student-employees were scheduled to work, but missed, in Paul Mitchell The School salons.  Student-employees who did not pay the fine and did not make up time for a certain

19

amount of absences were not permitted to graduate from the program.

86.     By the time he completed the program, Plaintiff Thomas had accumulated approximately $500 in fines for making up missed hours.  Plaintiff Thomas necessarily had to miss some class time because he worked another job while attending Paul Mitchell The School.  Defendants required Plaintiff Thomas to pay the fines before Defendants would release information necessary to receive his license from to the state cosmetology board.

## VI.   CALIFORNIA CLASS ALLEGATIONS

87.     Plaintiffs Morales, Palominos, and Handcock re-allege and incorporate by reference herein all allegations in the preceding paragraphs of this complaint.

88.     The California Plaintiffs bring the Second through Ninth Causes of Action under the California Labor Code, California state law, and the California Unfair Competition Law for Defendants' violations of California's wage-and-hour laws on behalf of the following proposed class, the members of which have all been damaged by Defendants' above-described conduct, and who are referred to herein as the "California Class":  "all persons who, on or after October 25, 2009, performed or will perform personal services for customers, performed or will perform cleaning, reception, or support services, or sold beauty products on behalf of Paul Mitchell The School while enrolled at a Paul Mitchell The School salon or beauty school in California."

89.     The proposed California Class is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3).  The California Class is so numerous that joinder of all members is impracticable.  Common questions of law and fact exist as to all members of the California Class that predominate over any questions affecting individual members, including but not limited to the following:

        i.     Whether Plaintiffs and the California Class Members performed services for Paul Mitchell Corporate Defendants as "employees" within the meaning of the California Labor Code and wage orders;

       ii.    Whether Paul Mitchell Corporate Defendants failed and continue to fail to fully pay the California Class for all hours worked for Paul

20

Mitchell Corporate Defendants' personal services business in violation of California Labor Code §§ 200 *et. seq.* and § 1197 and California Business and Professions Code §§ 17200 *et. seq.*;

iii. Whether Paul Mitchell Corporate Defendants failed and continue to fail to fully pay the California Class overtime premium compensation  for all hours worked for Paul Mitchell Corporate Defendants' personal services business in violation of California Labor Code §§ 510, 1194 *et. seq.* and California Business and Professions Code §§ 17200 *et. seq.*;

iv. Whether Paul Mitchell Corporate Defendants failed and continue to fail to provide uninterrupted 30 minute meal periods and 10 minute rest breaks to the California Class in violation of California Labor Code §§ 226.7 and 512 and California Business and Professions Code §§ 17200 *et. seq.*;

v. Whether Paul Mitchell Corporate Defendants failed and continue to fail to make, keep, preserve and/or timely furnish records of daily hours worked, including the start and end of each work period, meal periods and wages earned in violation of California Labor Code § 226 and California Business and Professions Code §§ 17200 *et. seq.*;

vi. Whether Paul Mitchell Corporate Defendants failed and continue to fail to fully pay the California Class all wages earned and due at the time of separation in violation of California Labor Code §§ 201-203 and California Business and Professions Code §§ 17200 *et. seq.*;

vii. Whether Paul Mitchell Corporate Defendants failed and continue to fail to reimburse the California Class for necessary business

21

expenses in violation of California Labor Code §§- 2802 and 450(a)
and California Business and Professions Code §§ 17200 *et. seq.*;

viii.   Whether Paul Mitchell Corporate Defendants have coerced or
compelled California Class Members to patronize Defendants
and/or other companies in the purchase of salon and beauty
products and/or supplies, salon tools and accessories, and other
items in violation of California Labor Code § 450(a), warranting
restitution under California Business and Professions Code
§§ 17200 *et. seq.*;

ix.   Whether Defendants collected unlawful fines from Paul Mitchell
student-employees in violation of California Labor Code § 2928
and California Business and Professions Code §§ 17200 *et. seq.*;

x.   Whether Defendants were unjustly enriched by collecting unlawful
fines;

xi.   Whether Defendants' conduct is "unlawful", "unfair", or
"fraudulent" under the California Business and Professions Code
§§ 17200 *et. seq.*;

xii.   Whether Paul Mitchell Corporate Defendants should be enjoined
from continuing its unlawful practices; and

xiii.   The proper measure of damages sustained by the California Class
Members and the restitution owed to them.

90.     Plaintiffs Morales, Palominos, and Handcock's claims are typical of those of the
California Class.  Like other members of the California Class, Plaintiffs were subjected to Paul
Mitchell Corporate Defendants' policy and practice of requiring that its students provide unpaid
labor to support its personal services business under conditions tantamount to employment under
the California Labor Code and IWC Wage Orders and failing to provide uninterrupted 30-minute
meal periods and 10-minute rest periods during the course of their workdays.  Like the other

22

California Class Members, Plaintiffs were also subjected to Paul Mitchell Corporate Defendants' policy and practice of failing to maintain accurate and itemized wage statements and refusing to reimburse for necessary business expenses. Plaintiffs' job duties while working for Paul Mitchell Corporate Defendants' personal services business were also typical of other members of the California Class. Several Plaintiffs, like other members of the class, were subjected to Paul Mitchell Corporate Defendants' common policy and practice of imposing fines for absences.

91.     Plaintiffs Morales, Palominos, and Handcock will fairly and adequately represent and protect the interests of the California Class because they have no disabling conflicts of interest that would be antagonistic to other members of the California Class. Plaintiffs have retained counsel who are competent and experienced in class action wage-and-hour and Section 17200 litigation.

92.     Paul Mitchell Corporate Defendants have acted on grounds that apply generally to the California Class. Accordingly, injunctive and declaratory relief is appropriate for the California Class as a whole.

93.     Class treatment is superior to alternative methods to adjudicate this dispute because Plaintiffs Morales, Palominos, and Handcock and the similarly situated student-employees have suffered similar treatment and harm as a result of systematic policies and practices, and because absent a class action, Paul Mitchell Corporate Defendants' unlawful conduct will likely continue un-remedied and unabated given that the damages suffered by individual class members are small compared to the expense and burden of individual litigation. Class certification is also superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Paul Mitchell Corporate Defendants' practices.

## VII.   FLSA COLLECTIVE ACTION ALLEGATIONS

94.     Plaintiffs Morales, Palominos, Handcock, and Thomas re-allege and incorporate by reference all allegations in the preceding paragraphs of this complaint..

95.     Plaintiffs Morales, Palominos, Handcock, and Thomas bring the First Cause of

23

Action as a collective action pursuant to the FLSA, Section 16(b), 29 U.S.C. § 216(b), on behalf of themselves and: "all persons nationwide who, on or after October 25, 2010, performed or will perform personal services for customers, performed or will perform cleaning, reception, or support services, or sold beauty products on behalf of Paul Mitchell The School while enrolled at a Paul Mitchell The School salon or beauty school."

96.     At all relevant times, Plaintiffs Morales, Palominos, Handcock, and Thomas and the other Nationwide FLSA Collective Action Members have been similarly situated, have had substantially similar job requirements and job duties and performed their work without receiving any compensation.  Moreover, they have been subject to Defendants' common decisions, policies, programs, practices, procedures, protocols, routines, and rules that willfully misclassify the Collective Action Members as "students" during the periods of time that they operate as employees of Defendants and willfully fail to keep records required by the FLSA.

97.     Questions of law and fact common to Plaintiffs and the Nationwide FLSA Collective Action Members include but are not limited to the following:

    i.   Whether Plaintiffs and the Collective Action Members performed services for Defendants as "employees" within the meaning of the FLSA;

    ii.  Whether Defendants failed and continue to fail to pay Plaintiffs and the Collective Action Members for all hours worked at the minimum wage in violation of the FLSA, 29 U.S.C. §§ 201 *et. seq.*;

    iii. Whether Defendants failed and continue to fail to pay Plaintiffs and the Collective Action Members for all overtime hours at one and one half times the regular rate or applicable minimum wage in violation of the FLSA, 29 U.S.C. §§ 201 *et. seq.*;

    iv.  Whether Defendants misclassified Plaintiffs and the Nationwide FLSA Collective Action Members as students rather than employees during the periods of time they worked for Defendants'

24

personal services business;

    v.    Whether Defendants' violations are "willful" within the meaning of the FLSA, 29 U.S.C. §§ 201 *et. seq.*;

    vi.    Whether Defendants failed and continue to fail to maintain accurate records of hours worked in violation of the FLSA, 29 U.S.C. §§ 201 *et. seq.*;

    vii.    Whether Defendants are liable to Plaintiffs and the Nationwide FLSA Collective Action Members; and

    viii.    Whether Plaintiffs and the Nationwide FLSA Collective Action Members can be made whole by payment of damages.

98.    The First Cause of Action is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).  The Nationwide FLSA Collective Action Members are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided to the Nationwide FLSA Collective Action Members via first class mail to the last address known to Defendants.

## VIII.  NEVADA CLASS ALLEGATIONS

99.    Plaintiff Thomas re-alleges and incorporates by reference herein all allegations in the preceding paragraphs of this complaint.

100.    Plaintiff Thomas brings the Tenth through Fourteenth Causes of Action under the Nevada Revised Statutes and the Nevada Constitution for Defendants' violations of Nevada's wage and hour laws on behalf of the following proposed class, the members of which have all been damaged by Defendants' above-described conduct, and who are referred to herein as the "Nevada Class":  "all persons who, on or after October 25, 2009, or within the applicable statute of limitations period, performed or will perform personal services for customers, performed or will perform cleaning, reception, or support services, or sold beauty products on behalf of Paul Mitchell The School while enrolled at a Paul Mitchell The School salon or beauty school in

25

Nevada."

101.    The Nevada Class includes a subclass of student-employees who were required to pay Defendants fines of $12 per hour for hours worked to make up time that they were scheduled to work, but missed, in Paul Mitchell The School salons ("Nevada Absence Fine Subclass").

102.    The proposed Nevada Class and subclass are brought, and may properly be maintained, as a class action under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3).  The Nevada Class and Subclass are so numerous that joinder of all members is impracticable.  Common questions of law and fact exist as to all members of the Nevada Class and Subclass that predominate over any questions affecting individual members, including but not limited to the following:

     i.  Whether Plaintiff Thomas and the Nevada Class Members performed services for Defendants as "employees" within the meaning of the Nevada's wage-and-hour laws;

     ii.  Whether Defendants failed and continue to fail to fully pay the Nevada Class for all hours worked for Defendants' personal services business in violation of the Nevada Constitution, Article 15, Section 16 and Nevada Revised Statutes §§ 608.016 and 608.250;

     iii.  Whether Defendants failed and continue to fail to fully pay the Nevada Class overtime premium compensation for all hours worked for Defendants' personal services business in violation of NRS § 608.018;

     iv.  Whether Defendants failed and continue to fail to fully pay the Nevada Class all wages earned according to schedule in violation of the Nevada Constitution, Article 15, Section 16 and NRS § 608.060;

     v.  Whether Defendants failed and continue to fail to fully pay the Nevada Class all wages earned and due at the time of separation in

26

violation of NRS §§ 608.020, 608.030, and 608.040;

vi.   Whether Defendants were unjustly enriched by collecting unlawful
fines and owe restitution to the Nevada Absence Fine Subclass;

vii.  Whether Defendants should be enjoined from continuing their
unlawful practices; and

viii. The proper measure of damages sustained by the Nevada Class
Members and the restitution owed to them.

103.    Plaintiff Thomas' claims are typical of those of the Nevada Class and Subclass.
Like other members of the Nevada Class and Subclass, Plaintiff Thomas was subjected to
Defendants' policy and practice of requiring that students provide unpaid labor to support
Defendants' personal services business under conditions tantamount to employment under the
Nevada Revised Statutes and Nevada Constitution.  Plaintiff Thomas' job duties while working
for Defendants' personal services business were also typical of other members of the Nevada
Class.  Plaintiff Thomas, like other members of the class, was subjected to Defendants' common
policy and practice of imposing fines for absences. Plaintiff Thomas will fairly and adequately
represent and protect the interests of the Nevada Class because he has no disabling conflicts of
interest that would be antagonistic to other members of the Nevada Class. Plaintiff Thomas has
retained counsel who are competent and experienced in class action wage-and-hour and
commercial litigation.

104.    Defendants have acted on grounds that apply generally to the Nevada Class and
Subclass.  Accordingly, injunctive and declaratory relief are appropriate for the Nevada Class and
Subclass as a whole.

105.    Class treatment is superior to alternative methods to adjudicate this dispute
because Plaintiff Thomas and the similarly situated student-employees have suffered similar
treatment and harm as a result of systematic policies and practices, and because absent a class
action, Defendants' unlawful conduct will likely continue un-remedied and unabated given that
the damages suffered by individual class members are small compared to the expense and burden

27

of individual litigation.  Class certification is also superior because it will obviate the need for

unduly duplicative litigation which might result in inconsistent judgments about Defendants'

practices.

## FIRST CAUSE OF ACTION

**Unlawful Failure To Pay Minimum Wages And Overtime Due**
**(FLSA Minimum Wage and Overtime Violations, 29 U.S.C. §§ 201 *et. seq.*;**
**Brought by Plaintiffs Morales, Palominos, Handcock, and Thomas on Behalf of Themselves**
**and the Nationwide FLSA Collective Action Members Against All Defendants)**

106.   Plaintiffs Morales, Palominos, Handcock, and Thomas, on behalf of themselves

and all Nationwide FLSA Collective Action Members, re-allege and incorporate by reference the

allegations made in all prior paragraphs as if fully alleged herein.

107.   At all relevant times, Defendants have been, and continue to be, "employers"

engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.  At all

relevant times, Defendants have employed, and continue to employ the Nationwide FLSA

Collective Action Members as "employee[s]" within the meaning of the FLSA.  At all relevant

times, Defendants have had gross operating revenues in excess of $500,000.

108.   Plaintiffs Morales, Palominos, Handcock, and Thomas previously signed and filed

consents to sue in this action pursuant to 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256.

Additional Nationwide FLSA Collective Action Members will sign consent to sue forms and will

join this action as plaintiffs in the future.

109.   At all relevant times, Defendants have required and continue to require the

student-employee members of the Nationwide FLSA Collective Action to work for their personal

services business without compensation at the minimum wage as required by the FLSA, 29

U.S.C. § 206.

110.   At all relevant times, Plaintiffs and the other FLSA Collective Action Plaintiffs

regularly worked in excess of forty (40) hours per workweek and continue to do so.

111.   At all relevant times, Defendants operated under and continue to operate under a

decision, policy and plan, and under common policies, programs, practices, procedures,

28

protocols, routines and rules of willfully failing and refusing to pay the FLSA Collective Action Plaintiffs minimum wage for all hours worked and at time and a half rates for work in excess of forty (40) hours per workweek. At all relevant times, Defendants willfully, regularly and repeatedly failed, and continue to fail to make, keep and preserve accurate records required by the FLSA with respect to Plaintiffs and the other FLSA Collective Plaintiffs, including records sufficient to accurately determine the wages and hours of employment pertaining to Plaintiffs and other FLSA Collective Action Plaintiffs.

112. As a result of Defendants' violations of the FLSA, student-employee members of the Nationwide FLSA Collective Action suffered damages by being denied proper pay and overtime wages in accordance with Sections 206 and 207 of the FLSA.

113. This conduct constitutes "willful" violations of the FLSA within the meaning of 29 U.S.C. § 255(a). Because Defendants willfully violated the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

114. As a result of Defendants' unlawful acts, Plaintiffs Morales, Palominos, Handcock, and Thomas and the other Nationwide FLSA Collective Action Members are entitled to recover all damages for unpaid minimum wages and overtime compensation in amounts to be determined at trial, liquidated (double) damages, and/or prejudgment interest, attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**

**Unfair Competition**
**(California Business and Professions Code §§ 17200-17208;**
**Brought by Plaintiffs Morales, Palominos, and Handcock on Behalf of**
**Themselves and the California Class Members Against All Defendants)**

115. Plaintiffs Morales, Palominos, and Handcock, on behalf of themselves and the California Class Members, re-allege and incorporate by reference the allegations made in all other paragraphs in this complaint as if fully alleged herein.

116. Defendants' unlawful conduct, as alleged herein, constitutes unfair competition within the meaning of Business and Professions Code Section 17200. This unfair, unlawful,

29

and/or fraudulent activity includes Defendants' establishment and use of policies and procedures which resulted in Defendants' failure to pay student-employees at least minimum wage for all time worked under the FLSA and/or California law, failure to pay overtime wages under the FLSA and/or California law, failure provide meal periods or pay meal period premium wages, failure to provide all required rest periods or pay rest period premium wages, failure to provide timely payment of final wages, failure to provide accurate and itemized wage statements, and failure to reimburse business expenses.  Additionally, Defendants' policy and practice of compelling and/or coercing Plaintiffs to patronize Defendants and other person in violation of California Labor Code § 450(a) constitutes unlawful and/or unfair and/or fraudulent activity prohibited by Section 17200.

117.    Due to Defendants' unfair, unlawful, and/or fraudulent business practices, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their obligations to pay minimum wage for all hours worked; pay overtime premium wages for all hours worked; provide all required meal periods; authorize, permit and provide all required rest periods; provide itemized wage statements; reimburse business expenses; timely pay all unpaid wages following separation of employment; and comply with state law regarding coerced purchases from employees.

118.    As a result of its unlawful, unfair, and/or fraudulent acts, Defendants reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs Morales, Palominos, and Handcock and the California Class Members.  Defendants should be enjoined from this activity and made to disgorge these ill-gotten gains and restore to Plaintiffs and the California Class Members the wrongfully withheld wages and compensation and to provide restitution for the unlawful withholding and the delay in receiving wages and compensation due, pursuant to Section 17200.  Defendants should also be enjoined from coercing  employees to purchase items from Defendants and made to disgorge these ill-gotten gains and restore to Plaintiffs and the California Class Members the wrongfully collected proceeds.

119.    Accordingly, Plaintiffs Morales, Palominos, and Handcock and the California

30

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT
CASE NO. CV 13-04996-VGC

Class Members respectfully request the Court award judgment and relief in their favor to provide restitution and other types of equitable relief.

## THIRD CAUSE OF ACTION

**Unlawful Failure To Pay All Wages Due Under California Law**
**(California Labor Code §§ 200 *et. seq.*, 1194 *et. seq.*, 1197 *et. seq.*;**
**Brought by Plaintiffs Morales, Palominos, and Handcock on Behalf of Themselves**
**and the California Class Members Against All Paul Mitchell Corporate Defendants)**

120.    Plaintiffs Morales, Palominos, and Handcock, on behalf of themselves and the California Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

121.    During all relevant times, Plaintiffs Morales, Palominos, and Handcock and all members of the California Class were entitled to "wages" for labor or services rendered to Paul Mitchell Corporate Defendants within the meaning of California Labor Code § 200(a).

122.    During all relevant times, Paul Mitchell Corporate Defendants engaged in a widespread pattern and practice of failing to pay the statutory minimum wage and overtime rates to its California student-employees for the hours they worked for Paul Mitchell Corporate Defendants' personal services business.  Paul Mitchell Corporate Defendants' conduct deprives Plaintiffs Morales, Palominos, and Handcock and the other members of the California Class of full and timely payment for all hours worked in violation of the California Labor Code §§ 200 *et. seq.* and 1194 *et. seq.*

123.    As of result of Paul Mitchell Corporate Defendants' willful and unlawful failure to pay Plaintiffs Morales, Palominos, and Handcock and the other members of the California Class all earned wages due, Plaintiffs and Class Members are entitled to recover their unpaid wages, pre-judgment interest, and costs of suit and reasonable attorney's fees under both California Labor Code §1194 and California Code of Civil Procedure § 1021.5.

///

**FOURTH CAUSE OF ACTION**

**Unlawful Failure To Pay Overtime Due Under California Law
(California Labor Code §§ 510, 1194, *et. seq.* and Wage Order No. 2-2001;
Brought by Plaintiffs Morales, Palominos, and Handcock on Behalf of Themselves
and the California Class Members Against All Paul Mitchell Corporate Defendants)**

124.    Plaintiffs Morales, Palominos, and Handcock, on behalf of themselves and the California Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

125.    At relevant times, Plaintiffs and the members of the California Class were employees of Paul Mitchell Corporate Defendants, covered by California Labor Code Sections 510 and 1194 and Wage Order 2-2001.

126.    During all relevant times, Defendants required, and continues to require, the California Class Members to work in excess of eight hours per workday and forty hours per workweek.

127.    During all relevant times, California Labor Code § 510 and Wage Order No. 2-2001 required that an employer compensate at one and one-half times the employee's regular rate of pay (1) all work performed by an employee in excess of eight hours in one work day and 40 hours in any one workweek and (2) all work performed by an employee during the first eight hours worked on the seventh day of work in any one workweek.

128.    Defendants knowingly and willfully failed to pay overtime wages earned and due to its student-employees who worked in excess of eight hours per workday and forty hours per workweek.  Defendants' conduct deprives Plaintiffs and members of the California Class of full and timely payment for all overtime hours worked, in violation of the California Labor Code.

129.    As of result of Defendants' willful and unlawful failure to pay Plaintiffs Morales, Palominos, and Handcock and the other members of the California Class proper earned overtime wages, Plaintiffs and Class Members are entitled to recover their unpaid overtime compensation, pre-judgment interest, costs of suit and reasonable attorney's fees.

### FIFTH CAUSE OF ACTION

**Unlawful Failure To Provide Meal And Rest Periods**
**(California Labor Code §§ 226.7 and 512 and Wage Order No. 2-2001;**
**Brought by Plaintiffs Morales, Palominos, and Handcock on Behalf of Themselves**
**and the California Class Members Against All Paul Mitchell Corporate Defendants)**

130.   Plaintiffs Morales, Palominos, and Handcock, on behalf of themselves and the California Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

131.   At relevant times, Plaintiffs and the members of the California Class were employees of Paul Mitchell Corporate Defendants, covered by California Labor Code Sections 512 and 226.7 and Wage Order 2-2001.

132.   Plaintiffs Morales, Palominos, and Handcock and the California Class Members were regularly compelled to work in excess of five hours a day and 10 hours a day without Paul Mitchell Corporate Defendants providing half-hour meal periods in which they were relieved of all duties, as required by California Labor Code §§ 226.7 and 512 and Wage Order No. 2-2001, § 11.

133.   Defendants also failed to provide duty-free meal periods to Plaintiffs and the California Class members and failed to pay provide premium wages for missed meal periods. Defendants' policies and procedures ensured that its student-employees would not receive all legally required meal periods.  Defendants' policies and procedures also ensured that student-employees did not receive premium wages for missed meal periods, in violation of California law.

134.   Because Defendants failed to provide uninterrupted off-duty meal periods, Defendants are liable to Plaintiffs Morales, Palominos, and Handcock and the California Class Members for one hour of additional pay at the regular rate of compensation for each workday that the full and uninterrupted off-duty meal periods were not provided, pursuant to California Labor Code §§ 226.7 and Wage Order No. 2-2001, § 11(D).

135.   Plaintiffs Morales, Palominos, and Handcock and the California Class Members

were regularly suffered, permitted, and compelled to work over a four hour period (or major fraction thereof) without Defendants authorizing and permitting them to take paid 10-minute rest periods in which they were relieved of all duties, as required by California Labor Code §§ 226.7 and Wage Order No. 2-2001, § 12.  Defendants also failed to pay premium wages to Plaintiffs and similarly situated student-employees for missed rest periods.

136.    Defendants' policies and procedures ensured that Plaintiffs and similarly situated student-employees would not receive all legally required rest periods.  Defendants' policies and procedures also ensured that Plaintiffs and similarly situated student-employees did not receive premium wages for missed rest periods.

137.    Because Defendants failed to authorize and permit uninterrupted off-duty rest periods, they are liable to Plaintiffs Morales, Palominos, and Handcock and the California Class Members for one hour of additional pay at the regular rate of compensation for each workday that the full and uninterrupted off-duty meal periods were not provided, pursuant to California Labor Code §§ 226.7 and Wage Order No. 2-2001, § 12(B).

138.    Plaintiffs Morales, Palominos, and Handcock, individually and on behalf of the California Class Members, request recovery of meal-and-rest period compensation pursuant to California Labor Code §§ 226.7 and Wage Order No. 2-2001, as well as the assessment of any statutory penalties against Defendants, in a sum provided by the California Labor Code and/or other statutes.  Further, Plaintiffs Morales, Palominos, and Handcock and the California Class Members are entitled to seek and recover reasonable costs and will seek attorneys' fees under California Code of Civil Procedure § 1021.5.

### SIXTH CAUSE OF ACTION

**Unlawful Failure To Timely Pay All Wages Due Upon Separation Of Employment Under California Law (California Labor Code §§ 201, 202, and 203; Brought by Plaintiffs Morales, Palominos, and Handcock on Behalf of Themselves and the California Class Members Against All Paul Mitchell Corporate Defendants)**

139.    Plaintiffs Morales, Palominos, and Handcock, on behalf of themselves and the

34

California Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

140.    At all relevant times, Plaintiffs and the other members of the California Class were employees of Paul Mitchell Corporate Defendants covered by Labor Code Sections 201 or 202.

141.    Pursuant to Labor Code Sections 201 or 202, Plaintiffs and members of the California Class were entitled upon separation of employment to timely payment of all wages earned and unpaid prior to such separation.  Discharged student-employees, *i.e.*, those who graduated, were entitled to payment, immediately upon termination, of all wages earned and unpaid prior to discharge.  Student-employees who resigned, *i.e.*, interrupted or failed to complete their studies, were entitled to payment, within 72 hours after giving notice of resignation, of all wages earned and unpaid prior to resignation or, if they gave 72 hours previous notice, they were entitled to payment, at the time of resignation, of all wages earned and unpaid prior to resignation.

142.    Paul Mitchell Corporate Defendants failed to pay Plaintiffs and members of the California Class all wages earned and unpaid prior to separation of employment in accordance with Labor Code Section 201 or 202.  Plaintiffs are informed and believe and thereon allege that at all relevant times within the applicable limitations period, Defendants maintained a policy or practice of not paying unpaid wages to student-employees upon separation of employment.

143.    Defendants' failure to timely pay Plaintiffs and members of the California Class all wages earned prior to separation of employment in accordance with Labor Code Sections 201 or 202 was willful.  Defendants had the ability to pay all wages earned by student-employees prior to separation of employment in accordance with Labor Code Sections 201 or 202, but intentionally adopted policies or practices incompatible with the requirements of those provisions.

144.    Pursuant to Labor Code Section 203, Plaintiffs and members of the California Class are entitled to continuation of their wages, from the day their earned and unpaid wages were due upon separation of employment until paid, up to a maximum of 30 days.  Plaintiffs and

members of the California Class are entitled to recover the full amount of their unpaid wages, continuation wages under Section 203, and interest thereon, plus costs and attorney's fees.

## SEVENTH CAUSE OF ACTION

### Unlawful Failure To Provide Itemized Statements
**(California Labor Code §§ 226 and Wage Order No. 2-2001; Brought by Plaintiff Handcock on Behalf of the California Class Members Against All Paul Mitchell Corporate Defendants)**

145.    Plaintiff Handcock, on behalf of the California Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

146.    During all relevant times, Defendants intentionally failed to furnish to Plaintiff Handcock and the California Class Members, upon each payment of compensation, itemized statements accurately showing total hours worked, the applicable hourly rates in effect during each pay period and the corresponding hours worked at each hourly rate. Defendants have violated California Labor Code §226 by willfully failing to keep required payroll records accurately showing the hours Plaintiff Handcock and the California Class Members worked, the start and end of each work period, meal periods, gross wages earned, and net wages earned.

147.    Defendants are liable for civil penalties pursuant to California Labor Code § 226.

148.    Plaintiff Handcock and the California Class Members were damaged by these failures because, among other things, the failures led them to believe that they were not entitled to be paid wages or overtime, even though they were so entitled and because the failures hindered them from determining the amounts of wages and overtime compensation owed to them.

149.    Plaintiff Handcock and the California Class Members are entitled to the amounts provided in California Labor Code § 226(e), injunctive relief pursuant to California Labor Code § 226(h), plus costs and attorney's fees.

## EIGHTH CAUSE OF ACTION

### Coerced Purchases
**(California Labor Code §§ 17200, 450(a) *et. seq.*; Brought by Plaintiffs Morales, Palominos, and Handcock on Behalf of Themselves and the California Class Against All Paul Mitchell Corporate Defendants)**

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

CASE NO. CV 13-04996-VGC

102.    Plaintiffs Morales, Palominos, and Handcock, on behalf of themselves and the California Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

103.    Defendants have compelled and/or coerced Plaintiffs and California Class Members to patronize Defendants by requiring them to purchase certain items, including but not limited to salon and beauty products and/or supplies, salon tools and accessories, or other items directly from Defendants and/or other persons in violation of California Labor Code § 450.

104.    Defendants' actions were willful, fraudulent and oppressive, and were committed in conscious disregard of Plaintiffs' and California Class Members' rights.

105.    Plaintiffs, on behalf of themselves and similarly situated California Class Members, are entitled to restitution under Business and Professions Code §17200, *et seq.,* and request relief as described below.

**NINTH CAUSE OF ACTION**

**Unlawful Failure To Reimburse Business Expenses**
**(California Labor Code § 2802; Brought by**
**Plaintiffs Morales, Palominos, and Handcock on Behalf of Themselves and**
**the California Class Members Against All Paul Mitchell Corporate Defendants)**

150.    Plaintiffs Morales, Palominos, and Handcock, on behalf of themselves and the California Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

151.    During all relevant times, Paul Mitchell Corporate Defendants violated California Labor Code § 2802 by failing to indemnify Plaintiffs Morales, Palominos, and Handcock and the California Class Members for all necessary business expenditures incurred as a direct consequence of Defendants' failure to provide salon and beauty supplies necessary to service paying customers, in addition to certain equipment (like gloves) necessary for the job on occasion.  In order to provide the services advertised by Defendants and requested by its customers, Plaintiffs Morales, Palominos, and Handcock and the California Class Members purchased salon and beauty supplies.  At all relevant times, Defendants was aware that student-

37

employees are not properly supplied with the necessary products and supplies and equipment to perform the job, and were required to purchase them, in violation of California Labor Code § 2802.

152.    Defendants are required to indemnify its employees for all "necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties" pursuant to Section 2802, including losses to purchase and replace salon and beauty products and supplies, and equipment Plaintiffs and the California Class required to service Defendants' customers and perform their job duties.

153.    Pursuant to California Labor Code § 2802, Plaintiffs Morales, Palominos, and Handcock and the California Class Members are entitled to recover the full amount of their unreimbursed business expenses, reasonable attorney's fees, and costs of suit.

## TENTH CAUSE OF ACTION

**Unlawful Failure To Pay All Wages Due Under Nevada Law**
**(Nevada Constitution Article 15, Section 16 and Nevada Revised**
**Statutes §§ 608.016 and 608.250; Brought by Plaintiff Thomas on**
**Behalf of Himself and the Nevada Class Members Against All Defendants)**

154.    Plaintiff Thomas, on behalf of himself and the Nevada Class Members, re-alleges and incorporates by reference the allegations made in all prior paragraphs as if fully alleged herein.

155.    At all relevant times, Plaintiff Thomas and the other members of the Nevada Class were employees of Defendants covered by N.R.S. §§ 608.016 and 608.250 and the Nevada Constitution.

156.    At all relevant times, Defendants have required and continue to require the student-employee members of the Nevada Class to work for their personal services business without compensation at the minimum wage as required by the Nevada Constitution and N.R.S. §§ 608.016 and 608.250.

157.    At all relevant times, Defendants operated under and continue to operate under a decision, policy and plan, and under common policies, programs, practices, procedures,

38

protocols, routines and rules of willfully failing and refusing to pay Plaintiff Thomas and the Nevada Class Members minimum wage for all hours worked.

158. As of result of Defendants' willful and unlawful failure to pay Plaintiff Thomas and the other members of the Nevada Class proper earned wages, Plaintiff and Class Members are entitled to recover their unpaid wages, damages, injunctive relief, and attorney's fees and costs pursuant to Article 15, Section 16 of the Nevada Constitution and Nevada Revised Statutes §§ 608.016 and 608.250.

## ELEVENTH CAUSE OF ACTION

### Unlawful Failure To Pay Overtime Wages Under Nevada Law
### (Nevada Revised Statutes § 608.018; Brought by Plaintiff Thomas on
### Behalf of Himself and the Nevada Class Members against All Defendants)

159. Plaintiff Thomas, on behalf of himself and the Nevada Class Members, re-alleges and incorporates by reference the allegations made in all prior paragraphs as if fully alleged herein.

160. At all relevant times, Plaintiff Thomas and the other members of the Nevada Class were employees of Defendants covered by N.R.S. § 608.018.

161. At all relevant times, Defendants have required and continue to require the student-employee members of the Nevada Class to work in excess of eight hours per workday and forty hours per workweek.

162. At all relevant times, N.R.S. § 608.018 required that an employer compensate all work performed by an employee in excess of eight hours in one work day or 40 hours in any one workweek at one and one-half times the employee's regular rate of pay. Defendants' conduct deprives members of the Nevada Class of full and timely payment for all overtime hours worked, in violation of Nevada law.

163. At all relevant times, Defendants operated under and continue to operate under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff Thomas and the

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT
CASE NO. CV 13-04996-VGC

Nevada Class Members overtime wages.

164.    As of result of Defendants' willful and unlawful failure to pay Plaintiff Thomas and the other members of the Nevada Class proper earned overtime wages, Plaintiff and Class Members are entitled to injunctive relief, recovery of their unpaid overtime wages, damages, and attorney's fees and costs pursuant to N.R.S. § 608.018.

## TWELFTH CAUSE OF ACTION

**Unlawful Failure To Timely Pay All Wages Upon Separation Of Employment**
**(Nevada Revised Statutes § 608.020, 608.030, and 608.040;**
**Brought by Plaintiff Thomas on Behalf of Himself and the Nevada**
**Class Members Against All Defendants)**

165.    Plaintiff Thomas, on behalf of himself and the Nevada Class Members, re-alleges and incorporates by reference the allegations made in all prior paragraphs as if fully alleged herein.

166.    At all relevant times, Plaintiff Thomas and the other members of the Nevada Class were employees of Defendants covered by N.R.S. §§ 608.020 and 608.030.

167.    Pursuant to N.R.S. §§ 608.020 or 608.030, Plaintiff and members of the Nevada Class were entitled upon separation of employment to timely payment of all wages earned and unpaid prior to such separation.  Discharged student-employees, *i.e.*, those who graduated, were entitled to payment of all wages earned and unpaid prior to discharge immediately upon termination.  Student-employees who resigned, *i.e.*, interrupted or failed to complete their studies, were entitled to payment of all wages earned and unpaid prior to resignation no later than  the earlier of (1) the day on which the employee would have regularly been paid the wages or compensation, or (2) seven days after the employee resigned or quit.

168.    Defendants failed to pay Plaintiff and members of the Nevada Class all wages earned and unpaid prior to separation of employment in accordance with N.R.S. §§ 608.20 or 608.30.  Plaintiff is informed and believe and thereon alleges that at all relevant times within the applicable limitations period, Defendants maintained a policy or practice of not paying student-

employees upon separation of employment wages for all unpaid wages.

169.    Defendants' failure to timely pay Plaintiff and members of the Nevada Class all wages earned prior to separation of employment in accordance with N.R.S. §§ 608.20 and 608.30 was willful.  Defendants had the ability to pay all wages earned by student-employees prior to separation of employment in accordance with the law, but intentionally adopted policies or practices incompatible with the requirements of the law.

170.    Pursuant to N.R.S. § 608.40, Plaintiff and members of the Nevada Class are entitled to continuation of their wages, from the day their earned and unpaid wages were due upon separation of employment until paid, up to a maximum of 30 days.  Plaintiffs and members of the Nevada Class are thus entitled to recover the full amount of their unpaid wages, continuation wages under N.R.S. § 608.40, and interest thereon.

### THIRTEENTH CAUSE OF ACTION

**Unlawful Failure To Pay All Wages According To Schedule**
**(Nevada Revised Statutes § 608.060; Brought by Plaintiff Thomas on Behalf of Himself and the Nevada Class Members Against All Defendants)**

171.    Plaintiff Thomas, on behalf of himself and the Nevada Class Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

172.    At all relevant times, Plaintiff and the other members of the Nevada Class were employees of Defendants in private employment within the meaning of N.R.S. § 608.060.

173.    Pursuant to Section 608.060, Plaintiff and members of the Nevada Class were entitled to payment of wages or compensation on at least a semi-monthly basis.

174.    Defendants failed to pay Plaintiff and members of the Nevada Class all wages earned on at least a semi-monthly in accordance with N.R.S. § 608.060.  Plaintiff is informed and believe and thereon alleges that at all relevant times within the applicable limitations period, Defendants maintained a policy or practice of not paying student-employees according to the schedule established by law.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

CASE NO. CV 13-04996-VGC

175.     Defendants' failure to timely pay Plaintiff and members of the Nevada Class all wages earned in accordance with N.R.S. § 608.060 was willful.  Defendants had the ability to pay all wages earned by student-employees on at least a semi-monthly basis in accordance with the law, but intentionally adopted policies or practices incompatible with the requirements of the law.

176.     Pursuant to N.R.S. § 608.060, Plaintiff and members of the Nevada Class are entitled to recover the full amount of their unpaid wages and interest thereon, plus attorney's fees and costs.

## FOURTEENTH CAUSE OF ACTION

### Unjust Enrichment/Restitution Under Nevada Law
### (Brought by Plaintiff Thomas on Behalf of Himself
### and Nevada Class Members Against All Defendants)

177.     Plaintiff Thomas, on behalf of himself and the Nevada Class Members, re-alleges and incorporates by reference the allegations made in all prior paragraphs as if fully alleged herein.

178.     Under Nevada law, "unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nevada Industrial Dev. v. Benedetti*, 103 Nev. 360, 363 n. 2 (1987).  The essential elements of unjust enrichment are "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." *Unionamerica Mtg. v. McDonald*, 97 Nev. 210, 212 (1981).

179.     Defendants have received a substantial monetary benefit from fines imposed on Plaintiff and Class Members under circumstances that make receipt or retention of such benefit unjust.  Defendants have been unjustly enriched in violation of Nevada law by levying and collecting unjustified fines from Plaintiff Thomas and the Nevada Class Members to make up for absences during their scheduled shifts.  Even when Class Members absences were due to unavoidable conflict or emergency, Defendants' policy and practice was to fine class members

42

$12 to make up for absences during their scheduled shifts. As discussed above, this fine is neither justified nor proportional to the wages to which Plaintiff Thomas and the Nevada Class Members were and are entitled. Additionally, the fine is unrelated to any educational or other benefit for Class Members.

180. Plaintiff Thomas and the Nevada Class Members are entitled to recover the full amount of the unjustified fines in restitution and interest thereon, as well as reasonable attorney's fees, and costs of suit.

## FIFTEENTH CAUSE OF ACTION

### DECLARATORY RELIEF
**(28 U.S.C. §§ 2201 and 2202; Brought by Plaintiffs Morales, Palominos, Handcock, and Thomas on Behalf of Themselves and the Nationwide FLSA Collective Action Members Against All Defendants)**

181. Plaintiffs Morales, Palominos, Handcock, and Thomas, on behalf of themselves and all Nationwide FLSA Collective Action Members, re-allege and incorporate by reference the allegations made in all prior paragraphs as if fully alleged herein.

182. Plaintiffs and Defendants have a pending dispute under the FLSA, which the Court has jurisdiction to hear pursuant to 28 U.S.C. § 1331. The Court also has jurisdiction to hear Plaintiffs' request for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

183. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, and continue to employ the Nationwide FLSA Collective Action Members as "employee[s]" within the meaning of the FLSA.

184. Plaintiffs Morales, Palominos, Handcock, and Thomas previously signed and filed consents to sue in this action pursuant to 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256. Additional Nationwide FLSA Collective Action Members will sign consent to sue forms and will join this action as plaintiffs in the future.

185. At all relevant times, Defendants have required and continue to require the

members of the Nationwide FLSA Collective Action to work for their personal services business without compensation at the minimum wage as required by the FLSA, 29 U.S.C. § 206.

186.   At all relevant times, Plaintiffs and the other FLSA Collective Action Plaintiffs regularly worked in excess of forty (40) hours per workweek and continue to do so.

187.   At all relevant times, Defendants operated under and continue to operate under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the FLSA Collective Action Plaintiffs minimum wage for all hours worked and at time and a half rates for work in excess of forty (40) hours per workweek.  At all relevant times, Defendants willfully, regularly and repeatedly failed, and continue to fail to make, keep and preserve accurate records required by the FLSA with respect to Plaintiffs and the other FLSA Collective Plaintiffs, including records sufficient to accurately determine the wages and hours of employment pertaining to Plaintiffs and other FLSA Collective Action Plaintiffs.

188.   As a result of Defendants' violations of the FLSA, student-employee members of the Nationwide FLSA Collective Action suffered damages by being denied proper pay and overtime wages in accordance with Sections 206 and 207 of the FLSA.

189.   There is a substantive controversy between Plaintiffs and Defendants.  Plaintiffs and Defendants have adverse legal interests that are immediate, current, and significant.

190.   As a result of Defendants' unlawful acts, Plaintiffs Morales, Palominos, Handcock, and Thomas and the other Nationwide FLSA Collective Action Members are entitled to recover all damages for unpaid minimum wages and overtime compensation in amounts to be determined at trial, liquidated (double) damages, and/or prejudgment interest, attorneys' fees, costs, and such other legal and equitable relief as this Court deems just and proper.

191.   It is in the public interest to have these declarations of rights recorded.  Plaintiffs' declaratory judgment action serves the useful purpose of clarifying and settling the legal relations in issue.  The declaratory judgment action affords relief from uncertainty, insecurity, and controversy giving rise to this action.

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

CASE NO. CV 13-04996-VGC

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiffs, on behalf of themselves, the proposed Collective Action and Classes, and all others similarly situated, pray for judgment and the following specific relief against Defendants as follows:

1.      Designating this action as a collective action on behalf of the proposed Nationwide FLSA Collective Action Opt-In Class (asserting FLSA claims) and

(i)      promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective Action Opt-In Class, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

(ii)      tolling the statute of limitations on the claims of all members of the FLSA Collective Action Opt-In Class from the date the original Complaint was filed until the Opt-In Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

2.      Certifying this action as a Class Action on behalf of the California Class;

3.      Designating Named Plaintiffs Morales, Palominos, and Handcock as representatives of the California Class;

4.      Certifying this action as a Class Action on behalf of the Nevada Class;

5.      Designating Named Plaintiff Thomas as representative of the Nevada Class;

6.      Certifying this action as a Class Action on behalf of the Nevada Absence Fine Subclass;

7.      Designating Named Plaintiff Thomas as representative of the Nevada Absence Fine Subclass;

8.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, California law, and Nevada law;

9.      Awarding damages, restitution, and statutory penalties to be paid by Defendants;

10. Awarding costs and expenses, including reasonable attorney's fees and expert fees;

11. Awarding pre-judgment and post-judgment interest, as provided by law; and

12. Ordering such other and further legal and equitable relief as this Court deems, necessary, just and proper.


DATED:  April 29, 2014                          Respectfully submitted,

                                 By: ___/s/ Bryan J. Schwartz_____
                                     BRYAN SCHWARTZ (SBN 209903)
                                     ADETUNJI OLUDE (SBN 264873)
                                     BRYAN SCHWARTZ LAW
                                     1330 Broadway, Suite 1630
                                     Oakland, California 94612
                                     Telephone: (510) 444-9300
                                     Facsimile:  (510) 444-9301
                                     Email: bryan@bryanschwartzlaw.com
                                     Email: adetunji@bryanschartzlaw.com
                                     *Attorneys for Individual and Representative*
                                     *Plaintiff Jessica Morales, et al., and the Putative*
                                     *Class*

                                     LEON GREENBERG(SBN 226253)
                                     DANA SNIEGOCKI(SBN 261212)
                                     Law Office of Leon Greenberg
                                     2965 South Jones Boulevard #E-4
                                     Las Vegas, Nevada 89146
                                     Telephone: (702) 383-6085
                                     Facsimile:  (702) 385-1827
                                     Email: leongreenberg@overtimelaw.com
                                     Email: dana@overtimelaw.com
                                     *Attorneys for the Named Plaintiffs and all others*
                                     *similarly situated*

FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT
CASE NO. CV 13-04996-VGC

1

## CERTIFICATE OF SERVICE

2

3

*Morales, et al. v. Von Curtis, Inc., et al*
Case No. 13-CV-04996 VGC

4

I hereby certify that on April 29, 2014, I caused the following document:

5

6

**FIRST AMENDED COLLECTIVE AND CLASS ACTIONCOMPLAINT**

7

8

to be served via ECF email to the following:

9

10

Julie A. Vogelzang (SBN 174411)
Edward M. Cramp (SBN 212490)

11

Courtney L. Baird (SBN 234410)

12

**DUANE MORRIS LLP**
750 B Street, Suite 2900

13

San Diego, CA 92101-4681

14

E-mail: jvogelzang@duanemorris.com
            ecramp@duanemorris.com

15

            clbaird@duanemorris.com

16

Attorneys for Defendants

17

Dated: April 29, 2014              BRYAN SCHWARTZ LAW

18

19

20

*/s/Adetunji Olude*
Adetunji Olude

21

**BRYAN SCHWARTZ LAW**

22

1330 Broadway, Suite 1630

23

Oakland, California 94612
Telephone (510) 444-9300

24

Facsimile (510) 444-9301

25

ATTORNEYS FOR PLAINTIFFS

26

27

28